

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RAFAEL REYES,

Plaintiff,

vs. Case No. 8:01-CV-1951-T-23TGW

CITY OF TAMPA, a municipality, and RODOLFO McFARLANE, in his individual capacity.

Defendant.
_______________________________________/

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

The Plaintiff RAFAEL REYES, by his attorneys, sues the Defendants CITY OF TAMPA, a municipality, and OFFICER RODOLFO McFARLANE, ("Officer McFarlane") in his individual capacity.

**JURISDICTION AND VENUE**

1. Count I of this Complaint is an action under 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for damages for violation of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments. Accordingly, this Court has jurisdiction over Count I of this Complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4).

2. The claims raised in Counts II and III of this Complaint arise out of the same nucleus of operative facts as the claim raised in Count I of this Complaint, and are so related



to the claim raised in Count I that they form part of the same case or controversy. Accordingly, this Court has jurisdiction over Counts II and III of this Complaint pursuant to 28 U.S.C. § 1367(a).

3. All of the acts and events giving rise to this action took place in Hillsborough County, Florida. Accordingly, venue lies in this Court pursuant to 28 U.S.C. § 1391(b).

**PARTIES**

4. Plaintiff Rafael Reyes is a resident of Hillsborough County, Florida, in the Middle District of Florida.

5. Defendant City of Tampa is a municipality in Hillsborough County, Florida, in the Middle District of Florida.

6. At all material times, Defendant Officer McFarlane was a sworn law enforcement officer employed by the Tampa Police Department, an agency of the City of Tampa. In the course of performing his duties as an officer of the Tampa Police Department, Officer McFarlane was an official representative of the City and the Tampa Police Department. Officer McFarlane is a "person" under 42 U.S.C. § 1983 who is subject to liability for violations of the constitutional rights of citizens.

## STATEMENT OF FACTS

**Relevant Florida and Federal Law**

7. Under Florida law, it is a misdemeanor for a person to "resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty without offering or doing violence to the person of the officer." Fla. Stat. § 843.02.

8. The Supreme Court, however, has recognized that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). It has held that "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.* at 462-63.

9. Florida courts have applied the same principles and the law in Florida is clearly established that the constitution does not permit a persons arrest for "simply asserting his right to free speech in what the police considered -- and what may well have been -- an offensive manner." *L.A.T. v. State*, 650 So. 2d 214, 217 (Fla. 3d DCA 1995). While Florida courts recognize that "protected speech can be rendered unprotected by a defendant's additional physical actions," conduct which is "entirely verbal" is protected by the First Amendment unless it consists of either "fighting words" or "false words that created a clear and present danger of harm to others." *Miller v. State*, 780 So. 2d 197, 198 (Fla. 2d DCA 2001). Where an individual "never physically interfered with police, never physically threatened them in any manner,

and never impeded the execution of their legal duty," that person's conduct is "pure speech, and is thus protected by the First Amendment." *W.L. v. State*, 769 So. 2d 1132, 1133 (Fla. 3d DCA 2000).

10. The protection afforded to speech critical of police officers under Florida and federal constitutional law extends to speech that is profane, disrespectful, or offensive. *See, e.g.*, *W.L.*, 769 So. 2d at 1133 (words directed at police officers that were "profane and offensive" held protected speech); *K.S. v. State*, 697 So. 2d 1275, 1275 (Fla. 3d DCA 1997) ("loud, obscene, verbal protests of police conduct" held protected speech); *L.A.T.*, 650 So. 2d at 218 (where defendant "loudly and profanely protested what he thought was the abusive conduct of the police," speech was protected); *K.Y.E. v. State*, 557 So. 2d 956 (Fla. 1st DCA 956) (where "child continually sang 'F[---] the police' . . . her speech and conduct fell within the protections afforded by the First Amendment").

**The Arrest of Plaintiff Rafael Reyes**

11. On the night of April 8, 2001, Plaintiff Rafael Reyes noticed Defendant Officer McFarlane seated next to a wall outside an Ybor City nightclub in Hillsborough County, Florida. On a previous occasion in Ybor City, there had been an incident in which a police officer indiscriminately sprayed pepper spray into a crowd that had gathered in the vicinity of a fight. Although Mr. Reyes was not a part of the fight and had come over only to see what the commotion was, he was sprayed in the face with

pepper spray. On the night of April 8, 2001, Mr. Reyes believed he recognized Officer McFarlane as the officer who had sprayed him with pepper spray on that previous occasion.

12. Mr. Reyes approached Officer McFarlane and stood approximately three (3) feet away from Officer McFarlane, with a rope barrier between them. He said to the officer, "How does it feel to be a pig?"

13. Officer McFarlane looked at Mr. Reyes and said "What?" Mr. Reyes repeated, "How does it feel to be a pig?"

14. Officer McFarlane, still seated approximately three (3) feet away from Mr. Reyes, said, "Get out of my face." Mr. Reyes gestured at Officer McFarlane with his middle finger raised.

15. Officer McFarlane got up, jumped over the rope, and grabbed the arm on which the finger had been raised. He twisted the arm behind Mr. Reyes' back, then handcuffed Mr. Reyes. Officer McFarlane placed the handcuffs on Mr. Reyes wrists so tightly that after a short while, Mr. Reyes could no longer feel his fingers. Officer McFarlane gave Mr. Reyes no warning he was being placed under arrest.

16. Officer McFarlane slammed Mr. Reyes into the brick wall next to where he had been sitting. Mr. Reyes put out his chest and turned his face away in an attempt to protect himself, but his eyebrow area hit the wall hard enough to leave a bump that lasted approximately one week.

17. Officer McFarlane then pushed Mr. Reyes the entire way to Officer McFarlane's car, which was parked in an Ybor City parking garage. As they traveled to the parking garage, Officer McFarlane was grabbing the handcuffs and pulling back on them such that Mr. Reyes's shoulders and wrists were in excruciating pain.

18. Mr. Reyes, in great pain, yelled "You're hurting me!" and "Please don't hurt me anymore" approximately eight times before the officer stopped and slightly loosened the handcuffs. Although the handcuffs were somewhat loosened, they were still tight enough to hurt Mr. Reyes wrists.

19. As Mr. Reyes and Officer McFarlane walked to the parking garage, Mr. Reyes said to the officer, "You can't arrest me for this!" Officer McFarlane responded, "I'm arresting you because you're being irresponsible."

20. At another point while Mr. Reyes and Officer McFarlane were walking to the parking garage, Mr. Reyes said, "You can't arrest me for giving you the finger." Officer McFarlane responded, "What was I supposed to do, everyone was watching."

21. When Officer McFarlane and Mr. Reyes reached Officer McFarlane's car, Officer McFarlane told Mr. Reyes to open his legs. Although Mr. Reyes did exactly as he was told, Officer McFarlane kicked them further apart. Officer McFarlane then searched Mr. Reyes three times.

22. Officer McFarlane then told Mr. Reyes to sit down in the back seat of the patrol car. Although Officer McFarlane left the car door ajar at first, after Mr. Reyes had been sitting there for a short period, he said to the officer, "You're not being fair." Officer

McFarlane responded by closing the car door, leaving Mr. Reyes in a closed car with the windows up and no air conditioning.

23. Officer McFarlane called another officer to take Mr. Reyes in. While they waited, Officer McFarlane filled out a Criminal Report Affidavit charging Mr. Reyes with opposing a law enforcement officer without violence pursuant to Florida Statutes section 843.02. The affidavit is attached to this Complaint as Exhibit A.

24. In the section of the Criminal Report Affidavit in which the officer is to state the "facts to establish that a crime has been committed by the defendant," Officer McFarlane wrote:

> While working in an extra duty capacity in Ybor City, the Def approached me and stated "How does it feel?" I asked, "Excuse me?" He restated "How does it feel?" I asked "What?" He said "How does it feel to be a pig?" When the crowd turned to me I told the Def to leave. He said again, louder, "How does it feel to be a pig?" I told him to leave, again, he refused and instead gave me a gesture with his middle finger.

Ex. A at 2.

25. After about twenty to thirty minutes waiting in Officer McFarlane's patrol car, a second officer arrived and transported Mr. Reyes to the Orient Road Jail in Hillsborough County, Florida. Mr. Reyes was booked into the jail.

26. Mr. Reyes remained in jail for three to four hours before a relative arrived and was able to bond him out.

**The Dismissal of Charges Against Rafael Reyes and Expungement of His Arrest**

27. Shortly after his release, Mr. Reyes retained the undersigned attorney to represent him in connection with the criminal case against him.

28. The State filed a Notice of Termination of Prosecution voluntarily dismissing the charges against Mr. Reyes on April 18, 2001, a copy of which is attached to this Complaint as Exhibit B.

29. Mr. Reyes moved to have all records of the arrest expunged. On July 9, 2001, a hearing was held on the petition to expunge. The court granted the petition and ordered expungement of Mr. Reyes' record.

30. Notwithstanding the expungement of Mr. Reyes' record, he will still be required to disclose his arrest if he is a candidate for employment with a criminal justice agency; is a defendant in a criminal prosecution; again petitions to have records expunged or sealed; is a candidate for admission to the Florida Bar; is seeking to be licensed or employed by the Department of Children and Family Services, the Department of Juvenile Justice, or a contractor or licensee of one of those agencies in a position with direct contact with children, the developmentally disabled, or the elderly; or is seeking to be licensed or employed by the Department of Education, any district school board, any or any other entity that licenses child care facilities.

**Damages**

31.     As a result of Mr Reyes' arrest and detention, Mr. Reyes suffered damages in the

form of:

   a.     loss of time during the period of his incarceration;

   b.     the deprivation of his liberty;

   c.     the mental and physical suffering caused by being publicly arrested and

          placed in handcuffs, including physical discomfort, emotional distress,

          embarrassment, and humiliation;

   d.     physical injuries, including the bump on his eyebrow area, abrasions on his

          wrists, and neck and shoulder pain that has required several visits to a

          chiropractor;

   e.     the cost of his bond;

   f.     the cost of retaining an attorney; and

   g.     the costs associated with having the arrest expunged from his record.


**Statutory Notice to Defendant City of Tampa**

32.     Pursuant to Florida Statutes Section 768.28, the undersigned provided the statutorily

required notice of intent to sue to the City of Tampa on October 18, 2001. The City

of Tampa has not resolved the claim. Under Florida Statutes 768.28(d), the City of

Tampa's failure to make final disposition of the claim within six months after its

filing is deemed a final denial of the claim.

**FIRST CAUSE OF ACTION**

***42 U.S.C. § 1983 (unlawful arrest / excessive force[1])***

33. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

34. Plaintiff Rafael Reyes had a clear and well-established constitutional right to be free from unreasonable seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

35. Plaintiff Rafael Reyes had a clear and well-established constitutional right not to be subjected to the unreasonable use of force in effectuating an arrest, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

36. On the night of April 8, 2001, Officer McFarlane placed Mr. Reyes under arrest based entirely on Mr. Reyes verbal conduct, which consisted of neither fighting words nor false words that created a clear and present danger of harm to others; the verbal conduct for which Officer McFarlane placed Mr. Reyes under arrest did not physically interfere with the officer, physically threaten the officer, or impede him in the execution of a legal duty.

37. On April 8, 2001, under color of law and by virtue of his office and official position as a member of the Tampa Police Department, unlawfully and without reasonable or

---

[1]Under the law of the Eleventh Circuit, an excessive force claim based on the force used to effectuate an unlawful arrest "is subsumed in [the] false arrest claim." *Jackson v. Sauls*, 206 F.3d 1156, 1171 n.19 (11th Cir. 2000) (quoting *Williamson v. Mills*, 65 F.3d 155, 158-59 (11th Cir. 1995)).

probable cause, and without warrant or process of any court, Defendant Officer McFarlane arrested Mr. Reyes and caused him to be booked at the Orient Road Jail in Hillsborough County, Florida.

38. Defendant Officer McFarlane made the April 8, 2001, arrest of Plaintiff Rafael Reyes under the authority he possessed as a member of the Tampa Police Department and therefore while acting under color of state law.

39. By making the April 8, 2001, unlawful arrest of Plaintiff Rafael Reyes, Defendant Officer McFarlane deprived Plaintiff Rafael Reyes of the constitutional right to be free from unreasonable seizures.

40. At the time of the April 8, 2001, arrest of Plaintiff Rafael Reyes, the law was clearly established that a law enforcement officer may not arrest an individual absent probable cause to believe the person had committed or was committing a criminal offense.

41. At the time of the April 8, 2001, arrest of Plaintiff Rafael Reyes, the law was clearly established that purely verbal conduct, even if critical of or directed at a police officer, and even if profane or disrespectful, is protected speech under the First Amendment and cannot be the basis of a lawful arrest.

42. A reasonable officer would not have believed he had probable cause to believe Plaintiff Rafael Reyes had committed or was committing a criminal offense in light of the fact that the purported basis for his arrest was entirely protected speech.

43.     A reasonable officer would not have believed he had probable cause to believe Plaintiff Rafael Reyes had committed or was committing a criminal offense in light of the fact that the charge of obstructing an officer requires that the officer be impeded or obstructed "in the lawful execution of any legal duty," and at the time of Mr. Reyes' conduct, Officer McFarlane was not in the process of investigating an offense, making an arrest, or engaging in any other lawful duty.

44.     Accordingly, a reasonable officer would not have believed the April 8, 2001, arrest of Plaintiff Rafael Reyes to be lawful in light of the clearly established law at the time of the arrest and the information Defendant Officer McFarlane possessed at the time of the arrest.

45.     In that there was no probable cause to arrest Mr. Reyes, there was no justification for the use of any force to effectuate an arrest, and a reasonable officer would have known to use force to arrest Mr. Reyes was excessive.

46.     By arresting of Plaintiff Rafael Reyes without any probable cause to believe he had committed a criminal offense and using excessive force against Plaintiff Rafael Reyes, Defendant Officer McFarlane acted with reckless and callous indifference to the federally protected rights of Plaintiff Rafael Reyes.


        WHEREFORE Plaintiff RAFAEL REYES demands judgment against Defendant RODOLFO McFARLANE for compensatory and punitive damages in an amount to be determined at trial; pre-judgment and post-judgment interest at the maximum rate allowable

at law; costs and attorneys' fees; and such other and further relief as the Court deems just and proper.

**SECOND CAUSE OF ACTION**

***false arrest / false imprisonment***

47. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

48. By placing Plaintiff Rafael Reyes under an unlawful arrest and arranging for him to be booked into the Orient Road Jail, Defendant Officer McFarlane unlawfully detained Plaintiff Rafael Reyes against his will and deprived him of his liberty.

49. The basis on which Defendant Officer McFarlane arrested Plaintiff Rafael Reyes was speech protected under the First Amendment, for which he lacked the authority to make an arrest, making the detention of Plaintiff Rafael Reyes by Defendant Officer McFarlane unreasonable and unwarranted under the circumstances.

50. Defendant Officer McFarlane detained Plaintiff Rafael Reyes for the purpose of imposing a confinement or with the knowledge that confinement would, to a substantial certainty, result.

51. In that there was no probable cause or other lawful basis for the arrest of Mr. Reyes, the use of force incident to that arrest was excessive and unwarranted.

52. The detention of Plaintiff Rafael Reyes by Defendant Officer McFarlane was malicious in that Defendant Officer McFarlane acted without reasonable cause by

arresting Plaintiff Rafael Reyes on the basis of speech that is protected by the First Amendment, used excessive force in the course of making the arrest, and exercised excessive and reckless disregard of Plaintiff Rafael Reyes's rights.

53. In unlawfully arresting Plaintiff Rafael Reyes based on protected speech and using excessive force in making the arrest, Defendant Officer McFarlane acted in bad faith and/or with malicious purpose and/or in a manner exhibiting wanton and willful disregard of the human rights of Plaintiff Rafael Reyes.

WHEREFORE Plaintiff RAFAEL REYES demands judgment against Defendant CITY OF TAMPA and Defendant RODOLFO McFARLANE for compensatory and punitive damages in an amount to be determined at trial; pre-judgment and post-judgment interest at the maximum rate allowable at law; costs and attorneys' fees; and such other and further relief as the Court deems just and proper.

**THIRD CAUSE OF ACTION**

***malicious prosecution***

54. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

55. The unlawful arrest of Plaintiff Rafael Reyes by Defendant Officer McFarlane and the issuance of Criminal Report Affidavit by Officer McFarlane were the actual and

legal cause of the commencement of an original criminal proceeding against Plaintiff Rafael Reyes.

56.     The notice of dismissal in the original criminal proceeding constituted a bona fide termination of that proceeding in favor of Plaintiff Rafael Reyes.

57.     In that purely verbal conduct directed at a police officer is speech protected by the First Amendment, there was an absence of probable cause to believe Plaintiff Rafael Reyes had committed a criminal offense in the original criminal proceeding.

58.      Defendant Officer McFarlane exhibited malice by causing the commencement of criminal proceedings against Plaintiff Rafael Reyes where there was an entire lack of probable cause for such proceedings and/or by exhibiting gross negligence or great indifference indicating a wanton disregard for the rights of Plaintiff Rafael Reyes.

59.     By causing the commencement of criminal proceedings against Plaintiff Rafael Reyes despite an entire lack of probable cause to believe Plaintiff Rafael Reyes had committed a criminal offense, Defendant Officer McFarlane acted in bad faith and/or with malicious purpose and/or in a manner exhibiting wanton and willful disregard of the human rights of Plaintiff Rafael Reyes.


WHEREFORE Plaintiff RAFAEL REYES demands judgment against Defendant CITY OF TAMPA and Defendant RODOLFO McFARLANE for compensatory and punitive damages in an amount to be determined at trial; pre-judgment and post-judgment interest at

the maximum rate allowable at law; costs and attorneys' fees; and such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED: April 22, 2002

Respectfully submitted:

James E. Felman (FB #775568)
Katherine Earle Yanes (FB #159727)
**KYNES, MARKMAN & FELMAN, P.A.**
P. O. Box 3396
Tampa, FL 33601-3396
Telephone: (813) 229-1118
Facsimile: (813) 221-6750

ATTORNEYS FOR PLAINTIFF RAFAEL REYES

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Amended Complaint has been furnished by U. S. Mail this 22d day of April, 2002, to:

Steven Hurwitz, Esquire
Attorney for Officer Rodolfo McFarlane
602 South Boulevard
Tampa, Florida 33606

Katherine Earle Yanes

# CRIMINAL REPORT AFFIDAVIT

# EXHIBIT "A"

178698

Use Ballpoint Pen
Press Firmly

# CRIMINAL REPORT AFFIDAVIT / NOTICE TO APPEAR

GRID # 128

| COURT CASE / J.F. ID # | | SAO # | OBTS / | | ARREST | |
|---|---|---|---|---|---|---|
| AGENCY REPORT 81-25607 | AGENCY NAME Tampa P.D. | ORI # 82907 | | | Probable Cause | Adult / Juvenile |

ADMINISTRATION

AGENCY REPORT 81-25607    AGENCY NAME Tampa P.D.    ORI # 82907

LOCATION OF OFFENSE 1600 Blk of E. 7th St    DATE OF OFFENSE 4.8.81    TIME OF OFFENSE 0010

WITHIN: TAMPA ☑  PLANT CITY ☐  TEMPLE TERRACE ☐  UNINCORPORATED AREA ☐

LOCATION OF ARREST 1600 Blk of E 7th St    DATE OF ARREST 4.8.81    TIME OF ARREST 0010

TAMPA COUNTY ☐   PLANT CITY CT ☐

BOOKING # C81-19-11  SOID #    WEAPON TYPE N/A    WEAPON SEIZED Yes ☐ No ☑

ARREST:
☐ Probable Cause ☑ Adult ☐ Juvenile
☐ Caplas ☐ Delinquency
☐ Fugitive Warrant ☐ Dependency
☐ VOP ☐ Felony
☐ Warrant ☐ Misdemeanor
☐ Juvenile Pickup ☑ Traffic MISC

REQUEST FOR:
☐ Caplas ☐ Traffic FEL
☐ Warrant ☐ Ordinance
☐ Summons ☐ Pickup
☐ Juvenile Pickup ☐ Other

NOTICE TO APPEAR:
☐ Arresting officer
☐ Booking supervising officer

DEFENDANT

NAME Reyes aka Rafael    ALIAS UNK

RACE: W-White  I-American Indian/Alaskan Native  HW-Hispanic White  HB-Hispanic Black  B-Black  O-Oriental/Asian

Race W  SEX M  D.O.B. 6-21-76    APPROXIMATE AGE 20

COMPLEXION MD  BUILD MA  HEIGHT 500  WEIGHT 150  COLOR: EYES BRO  HAIR BLK

LOCAL ADDRESS (Street, Apt. #, City, State, Zip)  Unknown    Ph #:

Permanent Address (Street, Apt. #, City, State, Zip) 413-08 Golf Club Cross Trailer Pk    Ph #:

Business Address (Street, Apt. #, City, State, Zip)    Ph #:

Driver's License No. R200-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  State FL  SS #    PLACE OF BIRTH Lima, Peru  DOC #

Gang Member: Yes ☐ No ☑  Jl. Gang Name

SCARS, MARKS, TATOOS:

UNIQUE FEATURES (i.e., Type, Desc.) None

IF JUVENILE:
School Name    Ph #:
Mother/Guardian    Address:    Ph #:
Father/Guardian    Address:    Ph #:

Released To: ☐ JAC ☐ Juvenile ☐ Parent ☐ Guardian ☐ Other Relationship ☐    ☐ Other

CO DEFENDANT

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

CHARGE(S)

| STATUTE (subsec.) ORD # | DV | CHARGE STATUS | BOND SET | CHARGE | TRAFFIC CITATION # | DRUG ACT/TYPE |
|---|---|---|---|---|---|---|
| 843.02 | N | M | | OPPOSING LAW E.O w/o Viol | — | N/A |
| | | | | | | |
| | | | | | | |

CHARGE STATUS: F-Felony  M-Misdemeanor  T-Traffic  O-Ordinance  FT-Felony Traffic

ACTIVITY: N-N/A  P-Possess  S-Sell  B-Buy  T-Traffic  R-Smuggle  D-Deliver  E-Use  K-Dispense/Distribute  M-Manufacture/Produce/Cultivate  Z-Other

TYPE: N-N/A  A-Amphetamine  B-Barbiturate  C-Cocaine  E-Heroin  H-Hallucinogen  M-Marijuana  O-Opium/Deriv.  P-Paraphernalia/Equipment  S-Synthetic  U-Unknown  Z-Ot

EVIDENCE LIST

A LIST OF TANGIBLE EVIDENCE (If none, write "None") (Evidence List must be provided for all NOTICES TO APPEAR)

| DESCRIPTION/AMOUNT PER UNIT | RECOVERED BY | GIVEN TO | PRESENT LOCATION |
|---|---|---|---|
| | | | |
| | | | |

NOTICE TO APPEAR

Mandatory Appearance in Court ☐    You need not appear in Court, but must comply with instructions on Reverse Side. ☐

COURT INFORMATION: You must appear in County Court at the:

COURTHOUSE TOWER ANNEX, 801 E. TWIGGS STREET ☐    COUNTY OFFICE BUILDING, MICHIGAN & REYNOLDS STREET ☐
(Corner of Jefferson & Twiggs Street), TAMPA, FLORIDA 33602    PLANT CITY, FLORIDA 33566

Division _____  COURTROOM # _____  ON _____, 20 ___, AT _____ a.m. ☐ p.m. ☐

I agree to appear at the time and place designated above to answer for the offense(s) charged or to pay the fine subscribed. I understand that if I willfully fail to appear before the Court as required by the Notice to Appear, I may be held in contempt of Court and a warrant for my arrest shall be issued. You may also be charged with the crime of Failure to Appear, F.S. 843.15. I certify that my address as listed above is correct and I further understand that I have a continuing duty to advise the Court of any changes in my address as set forth above.

Signature of Defendant/Juvenile    Parent or Guardian (if Juvenile)

Signature of Court    Green - State Attorney    Canary - Arresting Agency    Pink - Central Booking/Detention Center    Goldenrod - Defendant



AGENCY REPORT # A 41351

State facts to establish probable cause that a crime was committed by the defendant or that the child is dependent

WHILE WALKING BY AN EXIT WITH CAPACITY IN YBOR CITY THE DEF. APPROACHED ME AND STATED "HOW DOES IT FEEL". I ASKED, "EXCUSE ME." HE RESTATED "HOW DOES IT FEEL". I ASKED "WHAT." HE SAID "HOW DOES IT FEEL TO BE A PIG". WHEN THE CROWD TURNED TO ME I TOLD HIM TO LEAVE. HE SAID AGAIN, LOUDER: "HOW DOES IT FEEL TO BE A PIG." I TOLD HIM TO LEAVE AGAIN, HE REFUSED AND INSTEAD GAVE ME A GESTURE WITH HIS MIDDLE FINGER.

HE IDENTIFIED HIMSELF VERBALLY AS LISTED.

Judgement requested against defendant for agency investigative cost per Florida Statute 938.27: $ 70.00

OFFICER ______

I.D # 36595 Dist. & Squad 2/46

(Please Print The Above Information)

SWORN TO AND SUBSCRIBED BEFORE ME THIS ______ DAY OF ______, 20 ______

NAME/Title of Person Authorized to Administer Oath

POLICE REPORT WRITTEN: Yes ☐ No ☑

OFFICER ______ I.D # ______ Dist. & Squad ______

I SWEAR THAT THE ABOVE STATEMENTS ARE CORRECT TO THE BEST OF MY KNOWLEDGE. FOR NOTICES TO APPEAR, I ALSO CERTIFY THAT A COMPLETE LIST OF WITNESSES AND EVIDENCE KNOWN TO ME IS ATTACHED.

AFFIANT Signature ______

AFFIANT Print/Type Name ______

PROBABLE CAUSE STATEMENT

VICTIM NOTIFICATION

Defendant's

SAO FORM-425, 1/00

WITNESS STATUS: ... W-All Other Witnessed

178698

WITNESSES

# NOTICE OF TERMINATION OF PROSECUTION

# EXHIBIT "B"



IN THE COUNTY COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
OF THE STATE OF FLORIDA, IN AND FOR HILLSBOROUGH COUNTY
CRIMINAL JUSTICE DIVISION

STATE OF FLORIDA

CASE NO.: 01-CM-012445

VS

DIVISION D

Rafael Reyes

NOTICE OF TERMINATION OF PROSECUTION

TO THE CLERK OF THE COURT:

Having reviewed the charge contained in the Criminal Report Affidavit/Notice to Appear, the State Attorney's Office informs you that the charge contained therein is dismissed and prosecution is terminated as of this date and that the defendant need not appear for any further proceedings in this matter.

This notice is also your authority to inform the Sheriff's Department to release the bond if bond has been posted.

I HEREBY CERTIFY that a copy of the foregoing Notice of Termination of Prosecution has been furnished to the Clerk of County Court this 18th day of April, 2001.

Respectfully submitted,

MARK A. OBER
STATE ATTORNEY

Sandra L. Spoto

Sandra L. Spoto
Assistant State Attorney
Fl. Bar No. 0811953